**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **CHARLES C.**, | |
| *Plaintiff,* | No. 25-cv-04133 |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY**, | |
| *Defendant.* | |

APPEARANCES:

**Thomas J. Giordano, Jr.**
DISABILITY JUSTICE
200F Market Street, Suite 350
Philadelphia, PA 19103

   *On behalf of Plaintiff*

**Erica Adams**
**Shawn Cheree Carver**
SOCIAL SECURITY ADMINISTRATION
OFFICE OF PROGRAM LITIGATION
6401 Security Boulevard
Baltimore, MD 21235

   *On behalf of Defendant*

**O'HEARN, District Judge.**

This matter comes before the Court on Plaintiff Charles C.'s[1] ("Plaintiff") appeal from a denial of Social Security disability benefits by the Commissioner of Social Security ("Commissioner"). (ECF No. 1). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Commissioner's decision.

## I.    BACKGROUND

The Court recites herein only those facts necessary for its determination on this appeal.

### A.  Administrative History

Plaintiff filed an application for Disability Insurance Benefits on February 7, 2023, alleging disability beginning September 29, 2021. (AR 58). The Social Security Administration denied the claim initially on August 15, 2023, and again upon reconsideration on October 12, 2023. (AR 79, 85).

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (AR 109). The ALJ held a telephonic hearing on May 7, 2024, at which Plaintiff testified and was represented by counsel. (AR 34, 41–52). An impartial vocational expert ("VE") also testified at the hearing. (AR 52–56).

On May 30, 2024, the ALJ issued an unfavorable decision, concluding that Plaintiff was not disabled within the meaning of the Social Security Act from September 29, 2021, through the date of the decision. (AR 14–28). Plaintiff appealed that decision to the Appeals Council, which denied review on March 6, 2025. (AR 1, 157–58). Plaintiff timely appealed to this Court. (ECF No. 1).

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

### B. Plaintiff's Background and Testimony

Plaintiff was 51 years old on the alleged onset date. (AR 171). He graduated from high school and completed two years of college. (AR 41). Before the onset of his alleged disability, Plaintiff worked primarily as a merchandiser, which involved building displays, setting store layouts, stocking merchandise, and maintaining inventory. (AR 44–45, 195). In April 2023, he began working as a food delivery driver for DoorDash. (AR 42–43). This work was limited and flexible, typically amounting to only two or three hours per day. (*Id.*). As of the date of the administrative hearing, Plaintiff continued to work for DoorDash, but he explained that he stops working when fatigue requires him to rest. (AR 42–44). He testified that he could otherwise not perform heavier aspects of food delivery work, such as lifting a case of water, and that his girlfriend often assisted with driving and deliveries. (AR 44).

Plaintiff is a cancer survivor in remission. (AR 51–52). He testified that he has experienced persistent fatigue following cancer treatment, describing himself as lacking strength and becoming drained quickly. (AR 44, 46, 50). Plaintiff further explained that, due primarily to his cancer treatment, he experienced "brain fog," memory lapses, and episodes of confusion and feeling flustered, particularly when something went wrong during a delivery or when he was required to keep track of multiple things at once. (AR 46–47, 50–51). In addition, Plaintiff described ongoing right-knee problems, including difficulty with stairs, lifting, prolonged standing, and walking any significant distance. (AR 46–49).

### C. Medical History

Plaintiff was diagnosed with Stage III rectal adenocarcinoma, a form of cancer, in September 2021. (AR 321). Under the care of Omar Al Ustwani, M.D. ("Dr. Ustwani"), Plaintiff completed his cancer treatment in April 2022. (AR 321, 336–38). Subsequent oncology follow-

ups reflected no evidence of recurrence. (AR 283, 341, 651–54, 659–62). Dr. Ustwani's treatment records documented residual post-treatment symptoms, including significant fatigue, decreased stamina, and "brain fogginess." (AR 277, 553).

Additionally, until around April 2023, Plaintiff saw Joshua Bleier, M.D. ("Dr. Bleier") as part of his cancer treatment and monitoring while in remission. (*See, e.g.*, AR 346–59, 615). Dr. Bleier's notes from a January 2023 evaluation found "no evidence of recurrent disease" and reported that Plaintiff "reports doing well," was "[n]egative for depression," was "alert," and had a "normal" mood. (AR 651–53, 659–61).

After treatment, Plaintiff continued to report the same residual symptoms, including fatigue, reduced stamina, brain fog, anxiety, concentration difficulties, and peripheral neuropathy.[2] (AR 21–24, 277, 456, 553). Christopher Williamson, Psy.D. ("Dr. Williamson") performed a consultative mental status evaluation in July 2023. (AR 410–13). Dr. Williamson observed that Plaintiff appeared physically uncomfortable, lethargic, fatigued, depressed, and anxious. (AR 411). Dr. Williamson also described Plaintiff as sad, down, and despondent, and assessed a guarded prognosis. (AR 410–13). At the same examination, Dr. Williamson noted that Plaintiff demonstrated intact thought processes, good recall, an average fund of knowledge, and the ability to perform simple calculations and serial sevens. (AR 411). Dr. Williamson ultimately diagnosed Plaintiff with generalized anxiety disorder, panic disorder, and adjustment disorder with depressed mood. (AR 411).

---

[2] Peripheral neuropathy is "a well-known side effect" of chemotherapy. (Pl.'s Br., ECF No. 6 at 6). It is "caused by damage to the peripheral nervous system" and can manifest in symptoms such as "pain, weakness, tingling, numbness, or sensitivity, often in the hands or feet." *Peripheral Neuropathy*, AM. CANCER SOC'Y (May 25, 2025), https://www.cancer.org/cancer/managing-cancer/side-effects/pain/peripheral-neuropathy.html.

Plaintiff had a brain MRI post-cancer treatment in or around March 2024. (AR 830–31). The MRI revealed "[a] small number of predominantly punctate frontal white matter lesions," also known as "white-matter disease." (AR 831). Upon reviewing the MRI scans, Plaintiff's oncologist, Glenda Smith, M.D. ("Dr. Smith"), "characterized [this] as a normal variation." (AR 833).

Other medical professionals evaluated Plaintiff's psychological conditions. State agency psychological consultants Teissy Meza, Ph.D. ("Dr. Meza") and Ada Liberant, Psy.D. ("Dr. Liberant") both found that Plaintiff's mental limitations were non-severe, and that he possessed no limitations in understanding, remembering, and applying information. (AR 58–73). Additionally, Plaintiff's primary care provider, Ashley Odukoya, D.O. ("Dr. Odukoya") completed a medical opinion form addressing Plaintiff's functional limitations, assessing that Plaintiff would have limitations affecting concentration and work endurance, including a need for frequent unscheduled breaks and absences of approximately three days per month. (AR 469–70).

The medical records further catalogue some of Plaintiff's physical impairments, although they are not the primary focus of this appeal. Treatment notes document that Plaintiff suffered from knee arthritis as early as September 2021. (AR 326). The record also shows that Plaintiff had a right knee meniscus tear as early as 2020, which went untreated due to Plaintiff's inability to afford treatment. (AR 263, 456). More relevant to this appeal, Plaintiff reported to several of his doctors that he suffers from peripheral neuropathy in his feet. (AR 289, 295, 326, 341, 440). Plaintiff claimed his neuropathy was "mild" and "improving," and that "some issues" remained as of March 2023. (AR 289, 295, 341). But physical examinations reflected otherwise intact functioning, including no deficits in motor strength, tone, or sensation in the hands and feet. (AR 289, 295, 652–53, 661).

### D. Vocational Expert Testimony

The VE testified that Plaintiff's past work was classified under the DOT as a "merchandise displayer," which is a job generally performed at the medium exertional level, but Plaintiff performed it at the heavy exertional level. (AR 53). The ALJ then asked the VE to consider an individual limited to light work who could occasionally climb, balance, stoop, kneel, crouch, and crawl; could tolerate occasional exposure to high exposed places and moving mechanical parts; could understand, remember, and carry out simple instructions; and could tolerate occasional changes in a routine work setting. (AR 53–54). The VE testified that such an individual could not perform Plaintiff's past work, but could perform other light, unskilled jobs existing in the national economy, including housekeeper, merchandise marker, and mail sorter. (AR 54).

The VE further testified that those jobs would remain available if the individual could never climb ladders, ropes, or scaffolds; had to avoid all exposure to high exposed places and moving mechanical parts; and could only occasionally push and pull with the upper and lower extremities. (AR 54–55). Finally, the VE testified that competitive employment would be precluded if an individual were off task 15% of the workday or absent from work more than one day per month. (AR 55).

## II.   LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by an ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as

6

follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal citations and quotation marks omitted).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.").

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (internal citations and quotations omitted)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

7

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)).

### B.  Sequential Evaluation Process

The Commissioner of the Social Security Administration has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (alterations in original; citations and footnote omitted).

## III.   ALJ DECISION

In a decision dated May 30, 2024, the ALJ applied the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 29, 2021, through the date of the decision. (AR 17–28).

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 29, 2021. (AR 19). Although the ALJ noted some post-onset earnings, including part-time DoorDash work, the ALJ concluded that this work did not rise to the level of substantial gainful activity. (AR 19–20).

At Step Two, the ALJ determined that Plaintiff had five severe impairments: right knee meniscus tear, history of Stage III rectal adenocarcinoma, cognitive disorder, adjustment disorder, and generalized anxiety disorder. (AR 20). The ALJ also identified other medically determinable conditions—hypertension, pulmonary nodules, renal lesion, thrombocytopenia, COVID-19 infection, gastroesophageal reflux disease, constipation, insomnia, and anemia—but concluded that these were non-severe because the record evidence showed they caused no more than minimal work-related limitations. (*Id.*).

At Step Three, the ALJ found that none of the claimant's impairments, alone or in combination, met or medically equaled a listed impairment. (*Id.*). The ALJ specifically considered the musculoskeletal listings in Sections 1.15, 1.16, and 1.18, the oncology listings in Section 13.00 *et seq.*, and the mental health listings in Sections 12.04 and 12.06. (AR 20–21). As to the mental listings, the ALJ found moderate limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself, and

9

a mild limitation in interacting with others, but concluded that the paragraph B and paragraph C criteria were not satisfied. (AR 21–22).

Before proceeding to Step Four, the ALJ assessed Plaintiff's RFC, finding that Plaintiff retained the capacity to perform light work except:

> [H]e cannot climb ladders, ropes, or scaffolds, he can occasionally climb stairs and ramps, balance as described in [Selected Characteristics of Occupations], stoop, kneel, crouch, and crawl. Claimant can occasionally push and pull with his upper and lower extremities. Claimant must avoid all exposure to high exposed places and moving mechanical parts. Claimant can understand, remember, and carry out simple instructions, and he can tolerate occasional changes in a routine work setting.

(AR 22–23).

At Step Four, relying on the VE's testimony, the ALJ concluded that Plaintiff could not perform his past relevant work as a merchandise displayer, either as actually performed or generally performed. (AR 26).

At Step Five, however, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (*Id.*). Based on the VE's testimony, the ALJ identified the representative occupations of housekeeper, merchandise marker, and mail sorter. (AR 27). Because the ALJ found that Plaintiff could make a successful adjustment to other work, the ALJ concluded that Plaintiff was not disabled. (AR 27–28).

## IV.  DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed because: the RFC is not supported by substantial evidence because the ALJ failed to account for Plaintiff's psychological limitations and ignored Plaintiff's subjective complaints of symptoms; the ALJ did not properly

evaluate Dr. Odukoya's opinion; and, based on the improper RFC assessment, the ALJ's Step Five finding rested on an incomplete hypothetical to the VE.

The Court finds none of these arguments persuasive, and will affirm the ALJ's decision because it is supported by substantial evidence.

## A. The RFC is Supported by Substantial Evidence

Plaintiff makes two arguments as to why the RFC is faulty. He first contends that the RFC lacks substantial evidentiary support because the ALJ's decision does not "contain sufficient development and explanation to permit meaningful judicial review." (Pl.'s Br., ECF No. 6 at 9). Plaintiff's second argument partly rehashes the first, arguing that the ALJ's assessment of Plaintiff's various symptoms is both "internally inconsistent" as well as "legally deficient." (*Id.* at 11 (cleaned up)).

The Court will evaluate each asserted error in turn and ultimately finds that the RFC assessment is supported by substantial evidence and legally sufficient.

### 1.   The ALJ Adequately Explained the RFC Findings

Plaintiff argues that the ALJ failed to address evidence of his post-cancer cognitive limitations, such as fatigue, reduced stamina, lethargy, and anxiety, as well as physical limitations resulting from the peripheral neuropathy in his feet. (Pl.'s Br., ECF No. 6 at 9 (citing *Jones*, 364 F.3d at 505; *Burnett*, 220 F.3d at 121)). In Plaintiff's view, the ALJ focused on Plaintiff's cancer remission while overlooking the allegedly disabling residual effects of his treatment. (*Id.*).

The RFC represents "the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). In determining the RFC, the ALJ considers "all of the relevant medical and other evidence" in the record. *Id.* § 404.1545(a)(3). However, the ALJ need not incorporate limitations that are not credibly established. *Hess*, 931 F.3d at 213. To that end, the ALJ may

11

discount a claimant's subjective complaints if they are inconsistent with the evidence of record. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999); *see* 20 C.F.R. § 404.1529(c). At bottom, "so long as 'there is sufficient development of the record and explanation of findings to permit meaningful review[,]'" a reviewing court will not disturb the ALJ's RFC findings. *Tompkins v. Astrue*, No. 12-1897, 2013 WL 1966059, at *13 (D.N.J. May 10, 2013) (quoting *Jones*, 364 F.3d at 505).

Here, with respect to Plaintiff's cognitive impairments, the ALJ's RFC assessment is supported by substantial evidence. The ALJ noted Plaintiff's "allegations of cognitive decline . . . after chemoradiation therapy" and that he underwent a brain MRI which "revealed some evidence of white matter disease[.]" (AR 24). Though the ALJ credited Plaintiff's allegations of diminished cognitive functionality, the ALJ explained that "the intensity, persistence, and limiting effects" of the post-cancer cognitive symptoms "are not fully consistent with the medical evidence and other evidence in the record." (AR 23). To support that finding, the ALJ canvassed the medical evidence, and found that "clinical findings from various examiners, including neurology and psychology, have generally been unremarkable . . . ." (AR 23–24). The ALJ specifically relied on Dr. Williamson's consultative examination. While Dr. Williamson's report notes that Plaintiff appeared "sad," "lethargic," and "fatigued," the report also emphasized that Plaintiff "did not report any significant history of psychiatric treatment" and was otherwise "able to do simple mathematical calculations and had an average fund of knowledge[,]" "complete serial sevens, and had good recall[.]" (AR 24). Buttressing the ALJ's finding is Dr. Bleier's January 2023 evaluation, which notes that Plaintiff "reports doing well," was "[n]egative for depression," was "alert," and had a "normal" mood. (AR 651–53, 659–61). All of this indicates that the ALJ

12

reviewed all of the evidence related to Plaintiff's cognitive limitations, but ultimately determined that the medical evidence supported no greater limitations than those imposed by the RFC.

Plaintiff's argument concerning the ALJ's assessment of his physical impairments—specifically, neuropathy in his feet—is no more persuasive. In essence, Plaintiff contends that, had the ALJ properly assessed his neuropathy-related limitations, the RFC limiting him to light work with only occasional pushing and pulling would have included additional restrictions, such as limitations related to attendance. (Pl.'s Br., ECF No. 6 at 9–10).

The Court finds no error in the ALJ's assessment of Plaintiff's neuropathy-related limitations. The ALJ explained that no further limitations were warranted because the clinical findings "essentially showed physical exam results within normal limits" and characterized Plaintiff's neuropathy as "mild." (AR 25). Indeed, the ALJ derived the push-and-pull limitation, at least in part, from the assessment of Dr. Odukoya—the same physician whom Plaintiff later claims the ALJ did not sufficiently credit. (*Id.*; *see* Pl.'s Br., ECF No. 6 at 10). In any event, the ALJ then explained why he did not credit the remainder of Dr. Odukoya's opinion, including the limitation to three to four hours of concentrated work: "there is no consistent or supportable evidence to show that claimant cannot engage in sustained or full-time work activity." (AR 25). Plaintiff identifies no evidence undermining that determination, and the ALJ's conclusion that further neuropathy-related limitations were not required is supported by the record evidence of Plaintiff's neuropathy being "mild" and "improving." (AR 289, 295, 651, 659); *see Cheryl G. v. Comm'r of Soc. Sec.*, No. 20-15617, 2022 WL 1104968, at *6 (D.N.J. Apr. 13, 2022) ("[I]t is Plaintiff's burden to prove that [his] condition is disabling or that additional limitations are necessary.").

13

In sum, the ALJ thoroughly explained the RFC assessment as to both Plaintiff's mental and physical limitations, including why some evidence was credited over other conflicting evidence. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) ("[W]here there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination."). The RFC is therefore supported by substantial evidence and, "[t]o the extent Plaintiff asks this Court to re-evaluate the weight assigned to [the] evidence that was adequately considered . . . [t]his Court declines to do so." *Alycea K. v. Kijakazi*, No. 17-02683, 2022 WL 17733663, at *7 (D.N.J. Dec. 16, 2022).

> 2.   The ALJ Did Not Err in Assessing Plaintiff's Symptoms

Plaintiff argues that the ALJ's evaluation of his self-reported symptoms under 20 C.F.R. § 404.1529 is "legally deficient" because the ALJ discounted his testimony regarding fatigue, cognitive difficulties, neuropathy, and limited stamina by relying too heavily on cancer remission and isolated normal clinical findings. (Pl.'s Br., ECF No. 6 at 11–12). Much of this argument reprises Plaintiff's broader RFC challenge that the Court rejected above. But to the extent this argument alleges any legal error in the RFC analysis, the Court finds none.

Subjective allegations of pain or symptoms do not alone establish a disability. *See Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Rather, objective medical evidence is required to corroborate the subjective complaints of the claimant. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008). When evaluating a claimant's subjective statements, the ALJ follows a two-step inquiry. First, the ALJ must determine whether there is a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's alleged pain or other symptoms using a number of factors. *See* SSR 16-3p, 2017 WL 5180304, at *3–4. If such an impairment exists, the

14

ALJ must then assess the "intensity, persistence, and limiting effects" of the symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Id.* In conducting this analysis, the ALJ must explain why the claimant's statements regarding the intensity, persistence, and limiting effects of the symptoms are discounted. *Scott R. v. Kijakazi*, 643 F. Supp. 3d 483, 495 (D.N.J. 2022).

Here, the ALJ followed this two-step evaluation process and her conclusions are supported by substantial evidence. The ALJ first considered Plaintiff's underlying, medically determinable physical or mental impairments, specifically referencing his history of cancer. (*See* AR 23–24). The ALJ acknowledged Plaintiff's testimony regarding his residual symptoms from treatment, including neuropathy, chronic pain, brain fog, fatigue, anxiety, and concentration difficulties. (*Id.*). Although the ALJ found that Plaintiff's medically determinable impairments could reasonably cause these symptoms, she concluded that his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully consistent with the medical evidence and other evidence in the record." (AR 23). In doing so, the ALJ identified treatment notes and clinical findings that contradicted the severity of Plaintiff's subjective complaints, such as "unremarkable" neurological and psychological examinations where Plaintiff "is often noted to be feeling well with no complaints" and possessed an average fund of knowledge, could complete serial sevens, and had good recall. (AR 24). The ALJ further noted that the record did not reflect "any significant history of psychiatric treatment." (*Id.*). Finally, the ALJ canvassed the relevant medical evidence in the record, explaining which evidence was credited over others and why, and concluding that "the medical opinions . . . are generally inconsistent with the allegations of disabling work-related functional limitations[.]" (*Id.*).

15

Based on these findings, the ALJ reasonably concluded that Plaintiff's subjective complaints were not fully supported by the record and reached that conclusion under the applicable two-step framework. The Court therefore finds no basis to reverse the ALJ's conclusion.

\*\*\*\*

In sum, substantial evidence supports the ALJ's RFC assessment. The ALJ considered the conflicting medical evidence, addressed Plaintiff's subjective complaints, and applied the proper analytical framework. The Court therefore finds no basis to disturb the ALJ's RFC determination.[3]

## B. The ALJ Properly Evaluated Dr. Odukoya's Opinions

Plaintiff argues that the ALJ improperly rejected the opinion of his treating physician, Dr. Odukoya. (Pl.'s Br., ECF No. 6 at 10–11). According to Plaintiff, the ALJ's finding that Dr. Odukoya's limitations were "not supported by clinical findings" was too conclusory and "legally insufficient" to satisfy 20 C.F.R. § 404.1520c because it failed to meaningfully address the required supportability and consistency factors. (*Id.* at 10).

"The most important factors" for the ALJ in evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a), (b)(2). While the ALJ must probe those factors, the ALJ "need not reiterate the magic words 'support' or 'consistent' for each doctor," and may "weave [discussion of] supportability and consistency throughout her

---

[3] In addition to challenging the RFC, Plaintiff argues that the ALJ's Step Five finding is not supported by substantial evidence because the hypothetical posed to the VE, which incorporated the ALJ's RFC assessment, failed to include all credibly established limitations. However, by Plaintiff's own framing, this argument rises and falls with his RFC challenge. (*See* Pl.'s Br., ECF No. 6 at 12 (cleaned up) ("Because the RFC omitted supported limitations . . . the Step-Five finding lacks substantial evidence.")). Because the Court rejects Plaintiff's challenge to the RFC here, Plaintiff's challenge to the ALJ's Step Five determination necessarily fails, and the Court otherwise finds the ALJ's Step Five determination to be supported by substantial evidence.

analysis of which doctors were persuasive." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

Here, the ALJ adequately evaluated the supportability and consistency of Dr. Odukoya's medical opinions. As to supportability, the ALJ rejected Dr. Odukoya's opinion because it consisted of a checkbox-style form that did not cite supporting clinical evidence explaining why Plaintiff would be unable to sustain full-time work. (AR 25). That is a permissible consideration; a conclusory form opinion, particularly one offering severe limitations without narrative explanation or citation to objective findings, may reasonably be found less persuasive. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"). Thus, although the ALJ's supportability explanation was perhaps less fulsome than ordinarily provided, it nevertheless provides this Court with sufficient insight to conclude that Dr. Odukoya's opinion in this regard was fairly considered and reasonably rejected by the ALJ.

As to consistency, the ALJ explicitly noted that several of Dr. Odukoya's limitations— namely, "that [Plaintiff] needs a fifteen to twenty-minute unscheduled break every two hours, that claimant will be absent from work three days per month, and that claimant will experience frequent interference with the attention and concentration needed to perform simple tasks"—were "not supported by the [other] clinical findings in the record." (AR 25). That particular determination was made based on other evidence of Plaintiff's performance during mental-status testing, and by reference to conflicting evidence of work-related functional limitations, including the "mild mental limitations" assigned by Drs. Meza and Liberant and consistent reports of Plaintiff's neuropathy being "mild." (AR 25). Read together, these findings provide a discernible and reasonable rationale

17

for why the ALJ rejected Dr. Odukoya's more restrictive limitations as inconsistent with the rest of Plaintiff's medical evidence.

Accordingly, nothing is "legally deficient" about the ALJ's consideration of Dr. Odukoya's medical opinion, and the ALJ's decision is otherwise supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Commissioner. An appropriate Order will follow.

Date: May 27, 2026

**CHRISTINE P. O'HEARN**
**United States District Judge**

18